1  Alicia M. Veglia (SBN 291070)
   av@sedbetter.com
2  Frank Seddigh (SBN 289846)
   fs@sedbetter.com
3  SEDDIGH ARBETTER LLP
   6121 Sunset Blvd.
4  Los Angeles, CA 90028
   Telephone: (213) 873-1962
5  Facsimile: (213) 800-8228
6
7  *Attorneys for Plaintiff*
   *Kellwood Apparel LLC*

8
## UNITED STATES DISTRICT COURT

9
## CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 | Case No. |
| 12 13 KELLWOOD APPAREL, LLC, a Delaware Limited Liability Company, | **COMPLAINT FOR:** |
| 14      Plaintiff, | 1. **MISAPPROPRIATION OF TRADE SECRETS [VIOLATION OF 18 U.S.C. § 1836 *et seq.*]** |
| 15    vs. | 2. **MISAPPROPRIATION OF TRADE SECRETS [VIOLATION OF §§ 3426-3426.11 OF THE CALIFORNIA CIVIL CODE]** |
| 16 17 PROTREND LTD., a California corporation; and DOES 1 through 10, inclusive, | 3. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** |
| 18      Defendants. | 4. **INDUCING BREACH OF CONTRACT** |
| 19 20 | 5. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*** |
| 21 22 | **DEMAND FOR JURY TRIAL** |

23
24
25
26
27

Plaintiff Kellwood Apparel LLC ("Kellwood"), by and through its attorneys, hereby alleges for its Complaint against Defendant Protrend Ltd. ("Protrend" or "Defendant") as follows:

**PARTIES**

1.     Kellwood is a Delaware limited liability company, with its principal place of business in California located at 13071 East Temple Avenue, City of Industry, CA 91746.

2.     Kellwood is informed and believes that Protrend is, and at all relevant times was, a California corporation with its principal place of business at 6001 E. Washington Blvd., 2nd Floor, Commerce, CA 90040.

3.     Kellwood is ignorant of the true names and capacities of the Defendants named herein as Does 1 through 10, inclusive. Kellwood is informed and believes, and thereon alleges, that Does 1 through 10 are liable, in whole or in part, for the claims asserted in this Complaint against the Defendants. When Kellwood learns the true identities and capacities of Does 1 through 10, Kellwood will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through 10.

4.     At all times material to the allegations herein each Defendant was an agent and/or employee of each of the remaining Defendants, and in doing the acts alleged herein, each of the Defendants was acting within the course and scope of such agency or employment and with the permission and consent of the other Defendants. Kellwood is further informed and believes that in doing the acts alleged herein, each of the Defendants was acting in concert with each of the other Defendants.

**JURISDICTION AND VENUE**

5.     This Court has personal jurisdiction over Protrend. On information and belief, Protrend's principal place of business is located in this District.

6.     Protrend has transacted business in this District, contracted to supply goods or services in this District directly or through its agents, has offered for sale, sold and/or advertised its products and services in this District.

COMPLAINT

7.     This action is for theft and unauthorized disclosure of trade secrets, in violation of the law of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 in that the case arises under the laws of the United States pursuant to the Defend Trade Secrets Act of 2016, specifically 18 U.S.C. § 1836 *et seq*.

8.     This Court has supplemental jurisdiction over Kellwood's state law claims pursuant to 28 U.S.C. § 1367(a). The federal and state claims alleged herein are so related that they form part of the same case or controversy.

9.     Venue is properly asserted in this District pursuant to 28 U.S.C. 1391(b) in that a substantial part of the events or omissions giving rise to the claims herein arose in this District. Kellwood, as more fully described herein, has its principal place of business within this District so the unauthorized use and disclosure of the trade secrets has caused injury to Kellwood in this District.

## **FACTUAL ALLEGATIONS**

10.     Kellwood manufactures apparel under an array of different brands, as well as for private label retailers. Among other things, Kellwood owns and operates a clothing division called Democracy, which designs, produces and sells denim branded as "Democracy". Democracy is known for its fit technology, with proprietary slimming panels, stretch fabric, "no gap" elastic waistband, and other features which have led it to have a reputation for being a superior fitting jean. Democracy is also one of Kellwood's fastest growing and most profitable divisions.

11.     Kellwood's business operations are national and international. Although Kellwood is a large player in the fast-moving and ever-changing apparel market, the industry is highly competitive and operates on narrow margins. Thus, any disclosure of Kellwood's proprietary or confidential information or trade secrets would allow a competitor to unlawfully compete and narrow such margins even further, allowing such competitor to forego the time and expense of developing its own proprietary products.

12.     Paul Pyo ("Pyo") was employed by Kellwood as a Senior Account Executive, within its Democracy division, from on or around February 18, 2016 to March 20, 2018.  In this

**COMPLAINT**

position, Pyo reported directly to the President of Democracy, and was responsible for, among other things, interfacing with retail buyers and Kellwood designers to sell products to retail stores.

13.     In this role, Pyo received and acquired intimate knowledge of, and was otherwise privy to, highly sensitive and valuable trade secret information belonging to Kellwood. This includes valuable, confidential, trade secret information such as:

(i)     information and compilations of information about Kellwood's customers and customer relationships (including lists, contact information, identity of key decision-makers, historical sales data and purchasing information, sales trends, customer forecasts, customer preferences, customer needs, customer financials, customer leads);

(ii)     information and compilations of information about Kellwood's potential customers and potential customer relationships (including lists, contact information, identity of key decision-makers, historical sales data and purchasing information from Kellwood or others, sales trends, potential customer forecasts, potential customer preferences, potential customer needs, potential customer financials, potential customer leads);

(iii)     information and compilations of information about Kellwood's vendors, manufacturers, partners, distributors, and downstream companies in the sales channel (including lists, contact information, identity of key decision-makers, financials, historical sales, and forecasts);

(iv)     non-public information and compilations of information about Kellwood products and manufacturing technologies and practices (including business plans, product characteristics, marketing information, marketing plans, sales histories, sales forecasts, product plans, pricing information, tests, competitive intelligence, proprietary fabrics, fabric technology, fit technology, designs, patterns, styles, product research and development, prototypes, methods, techniques, processes, procedures, and programs);

**COMPLAINT**

(vi)    proprietary and confidential information and compilations of information about how Kellwood markets its products to partners, distributors, downstream companies in the sales channel, and customers; and

(vii)   other information (i-vii collectively, and with additional details provided below, the "Kellwood Trade Secret(s)").

14.     The Kellwood Trade Secrets have substantial economic value to Kellwood, including by virtue of the confidential nature of the information. Kellwood has invested large sums to create, update and maintain this information. Kellwood derives substantial economic value and competitive advantages from the Kellwood Trade Secrets. Kellwood would be harmed—and a competitor would derive value—if a competitor learned of the Kellwood Trade Secrets.

15.     At all relevant times, Kellwood took reasonable and necessary precautions to guard the secrecy and safety of the Kellwood Trade Secrets. Kellwood protects its facilities, servers, computers, networks, databases, and communications systems using a variety of physical and electronic security systems, such as access cards, password protection systems, firewalls, and encrypted communications technology. Kellwood also required its employees to read, acknowledge, and sign an employment agreement and/or a proprietary information and inventions agreement, swearing them to secrecy and loyalty.

16.     Despite his obligations to Kellwood and other protective safeguards for Kellwood's sensitive intellectual property and trade secrets, Protrend induced and caused Pyo to leave Kellwood to go to work for Protrend for the express purpose of unlawfully competing with Kellwood and misappropriating the Kellwood Trade Secrets.  As set forth herein, Protrend misappropriated and misused the Kellwood Trade Secrets for the specific purpose of developing and manufacturing products identical to Kellwood's Democracy products for the brand "LuLaRoe" (the "Infringing Products"), knowing that Pyo and other former Kellwood employees had improperly obtained the Kellwood Trade Secrets in violation of Kellwood's legal rights.

_____
**COMPLAINT**

17.     Specifically, Pyo began working for Protrend shortly after his departure from Kellwood and illegally took valuable Kellwood Trade Secrets with him to Protrend. Once employed by Protrend, Protrend had Pyo solicit at least two other former Kellwood employees to not only come to work for Protrend, but to disclose and misuse the Kellwood Trade Secrets in doing so.

18.     First, Protrend had Pyo solicit one of Democracy's former designers ("Employee 1") in order to further misappropriate the Kellwood Trade Secrets. Having worked with Employee 1 at Kellwood, Pyo and Protrend knew that Employee 1 had intimate knowledge of the Kellwood Trade Secrets, in particular, the technical aspects of the design and construction of the Democracy products that give them a competitive advantage in the market.

19.     After hiring Employee 1 at Protrend, Protrend had Pyo inform Employee 1 that they would be working on developing a new denim line, and instructed Employee 1 to be careful not to tell anyone at Kellwood that he or she would be going to work for Protrend.

20.     Protrend then had Pyo purchase samples of Democracy products from retail stores, and told Employee 1 that Protrend needed to obtain the exact fabric used by Democracy, and have the garments manufactured by the same factory used by Democracy. Pyo's stated goal was to replicate the fit of the Democracy product. Employee 1 was knowledgeable of the various fabrics used by Democracy and the mills where they were produced. Having previously worked at Kellwood, Pyo was also knowledgeable of the confidential names of these fabrics used by Democracy. Protrend had Pyo obtain the exact same fabrics and instructed Employee 1 to modify the inferior LuLaRoe product, and design products which incorporated Democracy's fabrics, as well as the proprietary features that are hallmarks of the Democracy's jeans (such as the trademarked "Ab" solution fit technology, "no gap" waistband, proprietary slimming panels, etc.).

21.     Protrend also had Pyo instruct Employee 1 to seek out "Employee 2," who had worked for Kellwood as a First Patternmaker, and hire her to work for Protrend. Employee 2 had extensive experience working on Democracy products at Kellwood, as well as intimate knowledge of the Kellwood Trade Secrets. With Protrend's knowledge and direction, and under

**COMPLAINT**

Pyo's direction at Protrend, Employee 2 was instrumental in replicating the garment specifications that utilized the proprietary features in Democracy's product, and incorporated them into Protrend's product for LuLaRoe, in an effort to develop denim product that fit like Democracy.

22. Protrend also obtained proprietary manufacturing and sourcing information from Pyo, Employee 1 and/or Employee 2 and then had them contact the factory that Kellwood uses to manufacture the Democracy product, the identity of which is a Kellwood Trade Secret, to produce the Infringing Products. This factory has extensive experience with manufacturing product for Democracy which utilizes the Kellwood Trade Secrets and is subject to a confidentiality agreement with Kellwood to protect Kellwood's confidential information and Kellwood Trade Secrets. Protrend had Pyo instruct Employee 1 to use an alias when communicating with this factory because Employee 1 had dealings with the factory during his or her tenure at Kellwood. Presumably, this was done in order to conceal Protrend's efforts to sell product that misappropriated the Kellwood Trade Secrets.

23. Over the course of dealing with the factory while working at Protrend, Employee 1 came to learn that the factory had expressed concern over many of the product designs that Protrend had given it for production because the factory feared it was in competition with the proprietary Democracy product from Kellwood. Protrend wrongfully and fraudulently reassured the factory that the Infringing Products were not in competition with Kellwood by falsely telling the factory that the Infringing Products would only be sold directly to consumers, and not through department stores, which are Kellwood's direct customers. In fact, Protrend was intending to market the Infringing Products to the same consumers who constitute the target market of consumers that buy Democracy's products.

24. Protrend also used Kellwood's confidential marketing, customer data, sales data, vendor information and other Kellwood Trade Secrets in order to produce and market the Infringing Products. Publicly disseminated marketing created by Protrend for the Infringing Products mimics Democracy's, and appears to (and in some cases even claims to) utilize the same proprietary and confidential fabrics, designs and fit technology that are valuable Kellwood Trade

**COMPLAINT**

Secrets. By way of example only, LuLaRoe videos showing women bending down and the jeans staying in place is a copy of what Democracy demonstrates in its fit videos. In addition, marketing for the Infringing Products copies Democracy's marketing slogans and other language which has already caused confusion in the marketplace.

25. In creating and/or selling the Infringing Products, Protrend has used and benefited from the Kellwood Trade Secrets and other Kellwood property, without permission from or compensation to Kellwood. And Protrend produced the Infringing Products with the knowledge that it had misappropriated the Kellwood Trade Secrets in order to do so.

26. Protrend's misappropriation has already caused customer confusion in the marketplace. On multiple instances, Kellwood has received inquiries from customers as to whether the inferior Infringing Products are Democracy products. This has, and continues to, damage Kellwood's reputation, intellectual property, brand loyalty and goodwill, all of which have come at a substantial cost to Kellwood through the development of the Kellwood Trade Secrets.

27. Moreover, during their employment with Kellwood, Pyo, Employee 1 and Employee 2 (together, the "Former Kellwood Employees") each executed an Employee Agreement as to Proprietary Materials and Confidential Information (together, the "Agreements"), which prevented each of them from disclosing any of Kellwood's Confidential Information, Proprietary Materials and trade secret information, among other things.

28. The Agreements include in the definition of "Confidential Information" such items as:

> [D]ocumentation and materials and other information or data, whether written, oral or available through any other medium, regarding Kellwood's methods of doing business, special 'know how', trade secrets, special or secret processes, products, machinery and equipment, research and plans, inventions, designs, sketches, patterns, styles, customers, customer lists, wages, prices, price lists, sales levels, profit and gross margins, discounts, employees, suppliers, problems, sourcing information, techniques, strategies, forecasts, source and object code, computer programs, financial statements, reports, internal memoranda, marketing programs, testing procedures, other details of interest to Kellwood competitors, Proprietary

**COMPLAINT**

Materials and any other documentation, materials, information or data which is confidential or proprietary in nature and relates to Kellwood's business . . . .

29.     On information and belief, when Protrend hired each of the Former Kellwood Employees, it was or should reasonably have been aware of the Agreements, and the prohibition against the unauthorized disclosure and/or use of Kellwood's Confidential Information and Kellwood Trade Secrets contained therein. Indeed, having signed such an agreement with Kellwood himself, Pyo, acting as Protrend's agent, would have known that any disclosure, misappropriation or misuse of Kellwood Trade Secrets by Employee 1 or Employee 2 was wrongful and in breach of their respective Agreements with Kellwood.

30.     Nevertheless, Protrend encouraged and/or aided the Former Kellwood Employees in breaching their respective Agreements with Kellwood. By way of non-exhaustive examples only, this included but was not limited to (i) instructing the Former Kellwood Employees to replicate garment specifications that utilized the proprietary features in Democracy's product in designing and manufacturing the Infringing Products; (ii) instructing the Former Kellwood Employees to obtain the same fabric utilized by Democracy and to design the Infringing Products which incorporated these fabrics, as well as the proprietary features that are hallmarks of the Democracy products (such as the trademarked "Ab" solution fit technology, proprietary slimming panels, etc.); and (iii) instructing the Former Kellwood Employees to convince Democracy's manufacturer to also manufacture the Infringing Products, utilizing Kellwood's Confidential Information to do so. All of these actions required the former Kellwood employees to necessarily disclose and/or use Kellwood's Confidential Information in breach of the Agreements.

31.     As a result of Protrend's interference with the Agreements between Kellwood and the Kellwood Former Employees, the Kellwood Former Employees did in fact breach their respective Agreements with Kellwood by contributing to the development of the Infringing Products using Kellwood's Confidential Information without authorization to do so.

## FIRST CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION

### [Violation of §§ 3426-3426.11 of the California Civil Code]

9

**(Against All Defendants)**

32.     Kellwood realleges and incorporates all of the above paragraphs as fully set forth herein.

33.     Kellwood owns the Kellwood Trade Secrets, described more fully above, which give Kellwood a significant competitive advantage over its existing and would-be competitors, including Defendants. This advantage was compromised as a result of Defendants' unlawful activities.

34.     The Kellwood Trade Secrets are confidential and proprietary information, and Kellwood made reasonable efforts under the circumstances to maintain the confidentiality of the Kellwood Trade Secrets. Kellwood's efforts included, but are not limited to: (i) having employees (including the Former Kellwood Employees) and consultants who may have access to the Kellwood Trade Secrets sign confidentiality agreements that oblige them not to disclose the Kellwood Trade Secrets or characteristics of the Kellwood Trade Secrets; (ii) limiting the circulation of said materials within Kellwood; (iii) protecting, limiting, and controlling access to computers with secure log-in identifications and passwords; and (iv) educating employees and contractors on the nature of Kellwood's information that is confidential and proprietary.

35.     The Kellwood Trade Secrets are related to Kellwood's products that are used in or intended for use in interstate or foreign commerce. Specifically, Kellwood's Democracy products are distributed and sold nationwide in interstate commerce. The Kellwood Trade Secrets were and are used, among other things, to develop, manufacture, market and sell Kellwood's products, including the Democracy products.

36.     Kellwood has expended considerable time, effort, and expense to compile, store, categorize and protect the Kellwood Trade Secrets and related proprietary and/or confidential information.

37.     The Kellwood Trade Secrets are not generally known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

38.     Kellwood invested significant resources to develop the Kellwood Trade Secrets. The Kellwood Trade Secrets derive independent economic value, actual and/or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from their disclosure or that person's use. The Kellwood Trade Secrets are of substantial economic value and have conferred a competitive advantage on Kellwood.

39.     Kellwood did not consent to the use of any of the Kellwood Trade Secrets by anyone other than authorized Kellwood employees using them for Kellwood's own business purposes.

40.     Accordingly, the Kellwood Trade Secrets are protectable Trade Secrets pursuant to the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1832-1839).

41.     While employed by Kellwood, the Former Kellwood Employees had a need to access the Kellwood Trade Secrets. During their employment with Kellwood, the Former Kellwood Employees executed the Agreements, wherein they agreed, *inter alia*, to return all proprietary materials, confidential information, trade secrets and other items related thereto to Kellwood upon their termination, and not to use or disclose any such materials for the benefit of anyone other than Kellwood.

42.     After the Former Kellwood Employees' employment with Kellwood ended, their right to possess, access, disclose or use the Kellwood Trade Secrets ceased to exist. Indeed, the Former Kellwood Employees were legally and contractually obligated not to disclose the Kellwood Trade Secrets or any other proprietary materials or confidential information, even after they left Kellwood. Despite the safeguards employed by Kellwood to protect the Kellwood Trade Secrets, the Former Kellwood Employees disclosed the Kellwood Trade Secrets to Defendants, who knowingly and willfully misappropriated them in order to unlawfully compete with Kellwood by creating the Infringing Products.

_____
**COMPLAINT**

43.     As set forth more fully above, Defendants have wrongfully possessed, accessed, and/or used the Kellwood Trade Secrets without any color of right, and without Kellwood's consent. This includes but is not limited to:

a)  Soliciting the Former Kellwood Employees to misappropriate and misuse the Kellwood Trade Secrets in order to develop the Infringing Products for Protrend;

b)  Using the Kellwood Trade Secrets to develop the Infringing Products in order to directly and unfairly compete with and divert sales away from Kellwood;

c)  Soliciting Kellwood's manufacturer to produce the Infringing Products utilizing the Kellwood Trade Secrets;

d)  Using Kellwood Trade Secrets about Kellwood customers, products and partners to improve Protrend's development, marketing, sales and distribution of its products, including the Infringing Products; and

e)  Using the Kellwood Trade Secrets to develop the Infringing Products in order to create customer confusion in the marketplace and thereby trade on Kellwood's reputation and goodwill.

44.     Defendants have illegally obtained and used Kellwood Trade Secrets as set forth above and through other means of which Kellwood presently is unaware.

45.     As a result of their improper possession and use of the Kellwood Trade Secrets, Defendants have violated the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1832-1839).

46.     On information and belief, at all times Defendants knew or had reason to know that they acquired, disclosed and/or used the Kellwood Trade Secrets by improper means and in breach of the contractual non-disclosure duties that the Former Kellwood Employees owed to Kellwood. Nonetheless, Defendants acquired and proceeded to use and disclose the Kellwood Trade Secrets improperly acquired by them and the Former Kellwood Employees in order to unfairly compete with and cause damage to Kellwood.

**COMPLAINT**

47. Defendants have used and disclosed Kellwood Trade Secrets without Kellwood's express or implied consent and without regard to Kellwood's rights, and without compensation, permission, or licenses for the benefit of themselves and others.

48. As a direct and proximate result of Defendants' violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1832-1839), Kellwood has sustained damages in an amount to be proven at trial, and Defendants have been unjustly enriched.

49. Defendants' misappropriation of the Kellwood Trade Secrets was, is, and remains willful, wanton and malicious; on information and belief, Defendants misappropriated the Kellwood Trade Secrets with the deliberate intent to injure Kellwood's business and improve their own, and with reckless disregard for the rights of Kellwood. Kellwood is therefore entitled to enhanced damages and reasonable attorneys' fees.

50. Defendants' wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Kellwood. Kellwood has no adequate remedy at law for such wrongs and injuries. Kellwood is therefore entitled to a temporary restraining order and/or preliminary and/or permanent injunction restraining and enjoining Defendants and their agents, servants, officers, directors, and employees, and all persons acting there under, in concert with, or on their behalf, from further using in any manner any Kellwood Trade Secrets.

## SECOND CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION

### [Violation of §§ 3426-3426.11 of the California Civil Code]

**(Against All Defendants)**

51. Kellwood realleges and incorporates all of the above paragraphs as fully set forth herein.

52. Kellwood owns the Kellwood Trade Secrets, described more fully above, which give Kellwood a significant competitive advantage over its existing and would-be competitors, including Defendants. This advantage was compromised as a result of Defendants' unlawful activities.

53.     The Kellwood Trade Secrets are confidential and proprietary information, and Kellwood made reasonable efforts under the circumstances to maintain the confidentiality of the Kellwood Trade Secrets. Kellwood's efforts included, but are not limited to: (i) having employees (including the Former Kellwood Employees) and consultants who may have access to the Kellwood Trade Secrets sign confidentiality agreements that oblige them not to disclose the Kellwood Trade Secrets or characteristics of the Kellwood Trade Secrets; (ii) limiting the circulation of said materials within Kellwood; (iii) protecting, limiting, and controlling access to computers with secure log-in identifications and passwords; and (iv) educating employees and contractors on the nature of Kellwood's information that is confidential and proprietary.

54.     Kellwood has expended considerable time, effort, and expense to compile, store, categorize and protect the Kellwood Trade Secrets and related proprietary and/or confidential information.

55.     The Kellwood Trade Secrets are not generally known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

56.     Kellwood invested significant resources to develop the Kellwood Trade Secrets. The Kellwood Trade Secrets derive independent economic value, actual and/or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from their disclosure or that person's use. The Kellwood Trade Secrets are of substantial economic value and have conferred a competitive advantage on Kellwood.

57.     Kellwood did not consent to the use of any of the Kellwood Trade Secrets by anyone other than authorized Kellwood employees using them for Kellwood's own business purposes.

58.     Accordingly, the Kellwood Trade Secrets are protectable Trade Secrets pursuant to the California Uniform Trade Secrets Act.

**COMPLAINT**

59.     While employed by Kellwood, the Former Kellwood Employees had a need to access the Kellwood Trade Secrets. During their employment with Kellwood, the Former Kellwood Employees executed the Agreements, wherein they agreed, *inter alia*, to return all proprietary materials, confidential information, trade secrets and other items related thereto to Kellwood upon their termination, and not to use or disclose any such materials for the benefit of anyone other than Kellwood.

60.     After the Former Kellwood Employees' employment with Kellwood ended, their right to possess, access, disclose or use the Kellwood Trade Secrets ceased to exist. Indeed, the Former Kellwood Employees were legally and contractually obligated not to disclose the Kellwood Trade Secrets or any other proprietary materials or confidential information, even after they left Kellwood. Despite the safeguards employed by Kellwood to protect the Kellwood Trade Secrets, the Former Kellwood Employees disclosed the Kellwood Trade Secrets to Defendants, who knowingly and willfully misappropriated them in order to unlawfully compete with Kellwood by creating the Infringing Products.

61.     As set forth more fully above, Defendants have wrongfully possessed, accessed, and/or used the Kellwood Trade Secrets without any color of right, and without Kellwood's consent. This includes but is not limited to:

f)  Soliciting the Former Kellwood Employees to misappropriate and misuse the Kellwood Trade Secrets in order to develop the Infringing Products for Protrend;

g)  Using the Kellwood Trade Secrets to develop the Infringing Products in order to directly and unfairly compete with and divert sales away from Kellwood;

h)  Soliciting Kellwood's manufacturer to produce the Infringing Products utilizing the Kellwood Trade Secrets;

i)  Using Kellwood Trade Secrets about Kellwood customers, products and partners to improve Protrend's development, marketing, sales and distribution of its products, including the Infringing Products; and

**COMPLAINT**

j)   Using the Kellwood Trade Secrets to develop the Infringing Products in order to create customer confusion in the marketplace and thereby trade on Kellwood's reputation and goodwill.

62.   Defendants have illegally obtained and used Kellwood Trade Secrets as set forth above and through other means of which Kellwood presently is unaware.

63.   As a result of their improper possession and use of the Kellwood Trade Secrets, Defendants have violated the California Uniform Trade Secrets Act.

64.   On information and belief, at all times Defendants knew or had reason to know that they acquired, disclosed and/or used the Kellwood Trade Secrets by improper means and in breach of the contractual non-disclosure duties that the Former Kellwood Employees owed to Kellwood. Nonetheless, Defendants acquired and proceeded to use and disclose the Kellwood Trade Secrets improperly acquired by them and the Former Kellwood Employees in order to unfairly compete with and cause damage to Kellwood.

65.   Defendants have used and disclosed Kellwood Trade Secrets without Kellwood's express or implied consent and without regard to Kellwood's rights, and without compensation, permission, or licenses for the benefit of themselves and others.

66.   As a direct and proximate result of Defendants' violation of the California Uniform Trade Secrets Act, Kellwood has sustained damages in an amount to be proven at trial, and Defendants have been unjustly enriched.

67.   Defendants' misappropriation of the Kellwood Trade Secrets was, is, and remains willful, wanton and malicious; on information and belief, Defendants misappropriated the Kellwood Trade Secrets with the deliberate intent to injure Kellwood's business and improve their own, and with reckless disregard for the rights of Kellwood. Kellwood is therefore entitled to enhanced damages and reasonable attorneys' fees.

68.   Defendants' wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Kellwood. Kellwood has no adequate remedy at law for such wrongs and injuries. Kellwood is therefore entitled to a temporary restraining

_____
**COMPLAINT**

1  order and/or preliminary and/or permanent injunction restraining and enjoining Defendants and
2  their agents, servants, officers, directors, and employees, and all persons acting there under,
3  in concert with, or on their behalf, from further using in any manner any Kellwood Trade Secrets.

### THIRD CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH
### CONTRACTUAL RELATIONS

**(Against All Defendants)**

69.     Kellwood realleges and incorporates all of the above paragraphs as though fully set forth herein.

70.     The Former Kellwood Employees each executed their respective Agreements, pursuant to which each agreed not to use or disclose Kellwood's Confidential Information, Proprietary Materials or trade secrets, as set forth therein. The Agreements are valid and binding contracts between Kellwood and the Former Kellwood Employees, respectively.

71.     On information and belief, Defendants were aware, by no later than when they hired each of the Former Kellwood Employees, of the Agreements between Kellwood and the Kellwood Former Employees.  Indeed, by virtue of the fact that Pyo himself was subject to the Agreement, he also knew (or at the very least had reason to know) that Employee 1 and Employee 2 were also subject to the Agreements with Kellwood at the time he hired them at Protrend.

72.     As set forth more fully above, Defendants' conduct prevented performance of the Agreements, which required the Former Kellwood Employees not to disclose or use any Confidential Information, Proprietary Materials or trade secrets without authorization from Kellwood.  This includes but is not limited to Defendants' conduct which induced the Former Kellwood Employees to disclose and/or use Kellwood's Confidential Information concerning Democracy's garment specifications, proprietary features, designs, fabrics and styles, confidential vendor information, confidential marketing and sales data, and other Confidential Information, as set forth more fully above.

**COMPLAINT**

73.     As a result of Defendants' interference with the Agreements between Kellwood and the Kellwood Former Employees, the Kellwood Former Employees did in fact breach their respective Agreements with Kellwood by contributing to the development of the Infringing Products using Kellwood's Confidential Information without authorization to do so.

74.     The actions of Defendants identified in this pleading were done with the intention of disrupting the performance of the Agreements.

75.     As an actual and proximate result of the conduct of Defendants, Kellwood has been damaged in the amount to be proven at trial.

76.     The conduct of Defendants was a substantial factor in causing Kellwood's harm, and Kellwood would not have suffered this harm but for Defendants' conduct as described more fully above.

77.     In performing the acts described above, Defendants acted willfully, maliciously, oppressively, with the intent to interfere with Kellwood's contractual interests and with conscious disregard for Kellwood's rights and the damages it would suffer thereby.

## FOURTH CAUSE OF ACTION FOR INDUCING BREACH OF CONTRACT

### (Against All Defendants)

78.     Kellwood realleges and incorporates all of the above paragraphs as though fully set forth herein.

79.     The Former Kellwood Employees each executed their respective Agreements, pursuant to which each agreed not to use or disclose Kellwood's Confidential Information, Proprietary Materials or trade secrets, as set forth therein. The Agreements are valid and binding contracts between Kellwood and the Former Kellwood Employees, respectively.

80.     On information and belief, Defendants were aware, by no later than when it hired each of the Former Kellwood Employees, of the Agreements between Kellwood and the Kellwood Former Employees.  Indeed, by virtue of the fact that Pyo himself was subject to the Agreement, he also knew (or at the very least had reason to know) that Employee 1 and Employee 2 were also subject to the Agreements with Kellwood at the time he hired them at Protrend.

81. Defendants intended to cause the Kellwood Former Employees to breach their respective Agreements by engaging in the conduct set forth in this pleading.

82. As set forth more fully above, Defendants' conduct did in fact cause each of the Former Kellwood Employees to breach their respective Agreements with Kellwood, by *inter alia*, disclosing and using Kellwood's Confidential Information, Proprietary Materials and/or trade secrets to develop the Infringing Products. This includes but is not limited to the disclosure and use of Kellwood's Confidential Information concerning Democracy's garment specifications, proprietary features, designs, fabrics and styles, confidential vendor information, confidential marketing and sales data, and other Confidential Information.

83. As an actual and proximate result of the conduct of Defendants, Kellwood has been damaged in the amount to be proven at trial.

84. The conduct of Defendants was a substantial factor in causing Kellwood's harm, and Kellwood would not have suffered this harm but for Defendants' conduct as described more fully above.

85. In performing the acts described above, Defendants acted willfully, maliciously, oppressively, with the intent to interfere with Kellwood's contractual interests and with conscious disregard for Kellwood's rights and the damages it would suffer thereby.

## FIFTH CAUSE OF ACTION FOR VIOLATION OF
## CAL. BUS. & PROF. CODE § 17200 *ET SEQ*

### (Against All Defendants)

86. Kellwood realleges and incorporates all of the above paragraphs as though fully set forth herein.

87. On information and belief, and as described more fully above, Defendants have knowingly performed acts, including but not limited to, misappropriating and failing to return Kellwood property, Confidential Information and Kellwood Trade Secrets, unfairly competing with Kellwood, intentionally inducing breaches of the Agreements, and intentionally interfering with Kellwood's contractual relations.

COMPLAINT

88.     On information and belief, Defendants knowingly committed these acts in order to unlawfully interfere with Kellwood's business and prospects, and to unfairly compete with Kellwood by utilizing its property, Confidential Information and Kellwood Trade Secrets. These acts constitute unlawful, unfair, and/or fraudulent business practices and unfair competition under Sections 17200, *et seq.*, of the California Business and Professions Code.

89.     As a result of such conduct, Kellwood has suffered, and will continue to suffer, irreparable harm by Defendants' unfair, unlawful and/or fraudulent practices and unfair competition, including but not limited to, harm to its reputation, goodwill, and stature in the business community and with its customers, advertisers, sponsors, contractors and others, for which there is no adequate remedy at law,  thereby justifying injunctive relief. Until and unless injunctive relief is granted, Defendants will be unjustly enriched, which should be disgorged pursuant to allowable remedies under Sections 17200, *et seq.*, of the California Business and Professions Code.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kellwood Apparel LLC prays as follows:

1.     For general damages in an amount to be proven at trial, but exceeding at least $1,000,000;

2.     For special damages in an amount to be proven at trial, but exceeding at least $1,000,000;

3.     For punitive and exemplary damages against Defendants on those causes of action which support such an award, including pursuant to 18 USC § 1836(b)(3)(c) and/or Cal. Civ. Code § 3426.3(c);

4.     For its attorney's fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D), Cal. Civ. Code § 3426.4 or any alternative;

5.     For pre-judgment and post-judgment interest;

6.     For a temporary restraining order and/or preliminary and/or permanent injunction enjoining Defendants, their directors, officers, agents, and employees, and those acting in privity

or in concert with them, and their partners, subsidiaries, divisions, successors, and assigns, from further acts of (i) trade secret misappropriation, (ii) unfair competition and (iii) interference with Kellwood's contractual relationships;

7.     For a judgment that Kellwood be awarded other relief including but not limited to disgorgement of any amounts by which Defendants have been unjustly enriched as a result of their wrongful conduct; and

8.     For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff KELLWOOD APPAREL LLC, and hereby demands a jury trial in the above matter.

Dated: January 8, 2020                              **SEDDIGH ARBETTER LLP**


By:    */s/ Alicia M. Veglia*
           Alicia M. Veglia
           *Attorneys for Plaintiff Kellwood Apparel LLC*

**COMPLAINT**